J-S32002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGINALD LEWIS | : | |
| | : | |
| Appellant | : | No. 3119 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 7, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004711-2022

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED OCTOBER 17, 2024**

Reginald Lewis appeals from the judgment of sentence, imposed in the Court of Common Pleas of Philadelphia County, after a jury convicted him of persons not to possess a firearm.[1]  We affirm.

At approximately 3:00 p.m. on April 29, 2022, Philadelphia Police Officer Douglas Gilbert was patrolling the area of 56th Street and Baltimore Avenue in a marked patrol vehicle.  *See* N.T. Trial, 2/1/23, at 22.  Officer Gilbert was "on patrol running license plates" and ran the license plate on a 1999 dark blue Buick sedan.  *Id.* at 22-23.  The plate came back as belonging to an unregistered Dodge.  *Id.* at 23.  As a result, Officer Gilbert attempted to conduct a traffic stop of the vehicle.  *Id.*  When Officer Gilbert activated his lights and sirens, the vehicle "attempted to get away . . . by speeding up."

_____

[1] 18 Pa.C.S.A. § 6105(a)(1).

*Id.* In doing so, the vehicle tried to go around a trolley, at which point it became wedged between a parked truck and the "decorative lawn ledge" of a home. *Id.* at 23-24. At that point, the vehicle's sole occupant, later identified as Lewis, exited the Buick and began running away from Officer Gilbert. *Id.* at 24. Officer Gilbert exited his cruiser and began pursuing Lewis on foot. Officer Gilbert testified that, as he ran, Lewis was grabbing the front of his waistband. *Id.* at 24-25. Officer Gilbert yelled for Lewis to stop approximately ten times during the 1 to 1½ minute pursuit. *Id.* at 27-28. Officer Gilbert attempted to stop Lewis with his Taser, but the barb was unable to penetrate Lewis' clothing. *Id.* at 27. Officer Gilbert was finally able to tackle Lewis at the top of the 800 block of South 55th Street. *Id.* at 28.

After Lewis was secured, Officer Gilbert conducted a search of his person. *Id.* at 30. He located Lewis' wallet in his pants and found two plastic bags of what appeared to be marijuana in his left inside jacket pocket, at which time Lewis remarked, "So. I smoke weed." *Id.* Officer Gilbert recovered from Lewis' right inner jacket pocket "[t]wo hollow point live [9-mm] rounds, gold in color, stamped [`]Sig Luger [9-mm']." *Id.* at 37.

After returning to the area of 56th and Baltimore, where the foot pursuit began, Officer Gilbert recovered a black Sig Sauer P-365 firearm loaded with one black magazine holding eight live 9-mm rounds and one spent 9-mm round in the chamber. *Id.* at 47, 51. As Officer Gilbert cleared the chamber for safety, he noticed that the bullets in the gun's magazine "matched the

stamping that was on the bullets that were found in [Lewis'] coat pocket[,] as well as the round that was in the chamber, the spent round." ***Id.*** at 55.

Philadelphia Police Officer Lowell Pindle testified that he received a radio call and responded to the 5600 block of Baltimore Avenue at approximately 3:20 p.m. on April 29, 2022. ***Id.*** at 120. Upon arrival, Officer Pindle observed Lewis' blue Buick. ***Id.*** After speaking to a nearby crossing guard, Officer Pindle went to the south-side sidewalk and observed a black handgun on the sidewalk in front of 5605 Baltimore Avenue. ***Id.*** at 120-21. He stood by the firearm, preserving the scene, until a supervisor arrived, along with Officer Gilbert. ***Id.*** at 121. Officer Gilbert ultimately recovered the firearm from the sidewalk. ***Id.***

Danielle Imes, a supervisor in the Philadelphia Police Department's Office of Forensic Science, testified that a DNA comparison had been requested in this case, but had yet to be completed as of the date of trial. ***See id.***, 2/2/23, at 10. Philadelphia Police Officer Mark Wilusz of the Firearms Identification Unit testified that the two cartridges found on Lewis' person were from the same manufacturer as the firearm found on the sidewalk in front of 5605 Baltimore Avenue. ***Id.*** at 28-29.

Lewis testified that, on the day in question, he had taken his friend to get a rental car. ***Id.*** at 44. Lewis testified that, when Officer Gilbert attempted to pull him over, he was concerned about losing his newly-purchased car, as his license was suspended. ***Id.*** at 45-47. As a result, he attempted to flee in the car. ***Id.*** at 45. When he crashed, he knew he was in possession of

marijuana and "realized the situation [was] different now . . . I just was shot. I can't be getting treated by no cops[.]  I realize[d] I had to really run now." *Id.*  Lewis testified that he did not see a gun on the ground when he ran, but that he had bumped into a trash can in the process of running.  *Id.*  Lewis testified that he was not holding his waistband, but rather holding his leg, where he had recently been shot.  *Id.* at 47.  He further testified that he had just acquired the jacket in which Officer Gilbert found the bullets from a cousin.  *Id.* at 51.

A jury convicted Lewis of persons not to possess a firearm and, on July 7, 2023, the trial court sentenced him to 3 to 6 years' incarceration, followed by 6 years of probation.  Lewis filed a motion for reconsideration of sentence, which was denied by operation of law on November 15, 2023.  Lewis filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  He raises one issue for our review:

> Was the evidence insufficient to support the verdict of guilt beyond a reasonable doubt[,] as the Commonwealth's case was totally circumstantial, where there was no direct evidence that [Lewis] possessed or threw a gun, there was no DNA or fingerprint evidence linking [Lewis] to the gun, and[,] therefore[,] the finding of guilt was based on speculation and conjecture?

Brief of Appellant, at 2.

> When presented with a sufficiency claim like appellant's, we must determine "whether the evidence proved at trial established the appellant's guilt of each element of the offenses charged beyond a reasonable doubt[.]" *In Interest of J.B.*, [] 189 A.3d 390, 408 ([Pa.] 2018), quoting *Commonwealth v. Bausewine*, [] 46 A.2d 491, 493 ([Pa.] 1946) ("The facts and circumstances proved must,

in order to warrant a conviction, be such as to establish the guilt of the defendant . . . beyond a reasonable doubt."). "Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Sanchez***, [] 36 A.3d 24, 37 ([Pa.] 2011), citing ***Commonwealth v. Meals***, [] 912 A.2d 213, 218 ([Pa.] 2006). When performing a sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. ***Id.***

***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020).

"The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Commonwealth v. Dunkins***, 229 A.3d 622, 631 (Pa. Super. 2020). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. ***Id.*** In conducting review, an appellate court may not weigh the evidence and substitute its judgment for the fact-finder. ***Id.*** at 631-32.

Lewis argues that the arresting officers never observed him in possession of a firearm, never saw him discard anything that could be construed as a weapon, and never observed anything, such as a bulge in his clothing, that could be construed as a firearm. ***See*** Brief of Appellant, at 10. Lewis further argues that the officers never heard the sound of a gun hitting the pavement and, although Officer Gilbert testified that Lewis was grabbing his waistband as he ran, he never actually observed Lewis clutching anything. ***Id.*** Lewis cites his own testimony that he was not, in fact, clutching his

- 5 -

waistband but, rather, holding the wound on his leg. *Id.* He also points to his testimony that the jacket in which the bullets were found had recently been given to him by his cousin. *Id.* at 11. Finally, Lewis argues that there was no DNA or fingerprint evidence linking him to the gun or to any of the bullets found either in the gun or his jacket pocket. *Id.* He asserts that, "[a]s this case was entirely circumstantial, the lack of such evidence was fatal to the prosecution." *Id.* In support of his claim, he directs our attention to several cases in which DNA evidence—or lack thereof—was instrumental to determinations by this Court in sufficiency challenges. He is entitled to no relief.

To sustain a conviction for possession of firearm prohibited under section 6105(a)(1), the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he had previously been convicted of an enumerated offense[2] that prohibits him from, *inter alia*, possessing, using, or controlling a firearm. *See* 18 Pa.C.S.A. § 6105(a)(1). It is well-settled that the element of "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession. Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa.

---

[2] The parties stipulated that Lewis had previously been convicted of robbery, a disqualifying offense for possession of a firearm under section 6105(b).

Super. 2018) (citations omitted). This Court has "defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation marks omitted). "To aid application, we have held that constructive possession may be established by a totality of the circumstances." *Id.* at 36. (citation and quotation marks omitted). Evidence showing constructive possession may be entirely circumstantial, meaning "the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." *Id.* at 37 (citations omitted).

The trial court addressed Lewis' sufficiency claim as follows:

Although [Lewis] is correct that the Commonwealth's case-in-chief was premised on circumstantial evidence, he is not correct that it amounted only to base speculation or conjecture. In the light most favorable to the Commonwealth, [Lewis]—the driver and sole occupant of his car—failed to stop for police when they activated their lights and sirens. In his attempt to further evade police, [Lewis] crashed his car and fled eastbound on foot down Baltimore Avenue towards 56th Street. This flight, first and foremost, evidences consciousness of guilt, which the jury was free to consider in reaching its guilty verdict. ***See Commonwealth v. Harvey***, 526 A.2d 330, 334 (Pa. 1987) ("It is a well-settled rule of law that if a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.").

As officers gave chase, [] Officer Gilbert[] observed [Lewis] grabbing at his front waistband. Though he did not see [Lewis] throw a firearm, minutes later, a second officer, [Officer] Pindle, recovered a Sig Sauer handgun from the sidewalk in front of 5605 Baltimore Avenue, some thirty feet from the site of the initial car

crash and along [Lewis'] route of travel. Finally, when police apprehended [Lewis], they recovered from his jacket pocket two Sig Sauer cartridge cases. Although DNA evidence did not tie [Lewis] to the gun or the bullets,[3] [Lewis'] flight, his movements at his waistband, his proximity to the recovered gun on the sidewalk, and the matching cartridges in his jacket pocket, together, formed a sufficient nexus from which the jury could infer that [Lewis] possessed and subsequently discarded the firearm. Thus, the jury's guilty verdict was supported by sufficient evidence.

Trial Court Opinion, 4/1/24, at 2-3 (citations to record omitted).

We concur with the trial court that the evidence presented at trial and all reasonable inferences derived therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, established that Lewis had conscious dominion over the firearm and had the requisite knowledge of its existence and location. **See Parrish**, 191 A.3d at 36. Moreover, the jury, as finder of fact, was entitled to weigh Lewis' flight as consciousness of guilt. **See Commonwealth v. Hudson**, 955 A.2d 1031, 1036-37 (Pa. Super. 2008) (finding flight or concealment admissible to show consciousness of guilt). Accordingly, we affirm.

Judgment of sentence affirmed.

_____

[3] As the Commonwealth aptly notes in its brief, "[t]he Commonwealth was not required to present direct evidence of [Lewis'] possession, including DNA evidence. The fact that the Commonwealth did not proffer any DNA evidence does not prove that the results of the DNA analysis would have been favorable to [Lewis]." Brief of Appellee, at 8-9, citing **Commonwealth v. Conway**, 14 A.3d 101, 110 (Pa. Super. 2011) ("[i]n DNA as in other areas, an absence of evidence is not evidence of absence"). Moreover, the record shows that, after Lewis sought a continuance of trial and requested DNA analysis, the trial court ordered him to "provide the [c]ourt with an order to obtain DNA report." Trial Court Docket, 12/6/22 (docket entry 46). Lewis never did so.

King, J., Joins the Memorandum.

Stabile, J., Concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2024